UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL G. HUFFMAN,<br><br>            Plaintiff,<br><br>        v.<br><br>DANIEL PARMO, et al.,<br><br>            Defendants. | Civil No.   11-cv-2829-LAB (DHB)<br><br>**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 14]** |

Plaintiff Daniel G. Huffman, a former state prisoner represented by counsel, filed his First Amended Complaint in this case on September 16, 2012, alleging (1) civil rights violations under 42 U.S.C. § 1983; (2) violations of California's Unruh Civil Rights Act; and (3) discrimination claims under the Americans with Disabilities Act. (ECF No. 9.) On September 28, 2012, the sole named Defendant, Daniel Parmo, filed a motion to dismiss the First Amended Complaint. (ECF No. 14.) Plaintiff filed an opposition to the motion to dismiss on October 17, 2012. (ECF No. 15.)

After a thorough review of the pleadings, the parties' papers and all supporting documents, this Court hereby RECOMMENDS that Defendant Parmo's motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**.

### I. PROCEDURAL BACKGROUND

Plaintiff filed his original Complaint in this case on December 5, 2011. (ECF No. 1.) On May 3, 2012, the summons was returned executed indicating that Defendant Parmo had been served. (ECF No. 5.)

1  On May 16, 2012, Defendant Parmo filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) Plaintiff was ordered to file an opposition to the motion to dismiss on or before June 13, 2012. (ECF No. 7.) However, on June 25, 2012, the Court noted that Plaintiff had not filed an opposition, and Plaintiff was given an extension until July 9, 2012 to do so. (ECF No. 8.)

Instead of filing an opposition, Plaintiff's counsel filed the operative First Amended Complaint on September 16, 2012. (ECF No. 9.) As a result, on September 18, 2012, District Judge Larry A. Burns issued an order that, among other things, granted Defendant Parmo's motion to dismiss the Complaint and accepted the First Amended Complaint as filed. (ECF No. 13.) In that order, Judge Burns stated:

> [T]he Court is not required to allow Plaintiff repeated attempts to correct defects he already knows about. Because Plaintiff, after seeing the motion to dismiss, filed an amended complaint, it is clear Plaintiff was on notice of what Defendant identified as defects in the complaint, and agreed with Defendant's observations. Should it prove that the First Amended Complaint fails to correct the defects identified in the motion to dismiss, the Court will not assume Plaintiff has been sandbagging by holding relevant facts back in hopes of pleading them later. Rather, the logical assumption would be that Plaintiff cannot plead additional facts to correct those defects, and that further opportunities to amend would be futile.

(*Id.* at 2:22-3:2.)

Defendant Parmo filed a motion to dismiss Plaintiff's First Amended Complaint on September 28, 2012. (ECF No. 14.) Plaintiff filed his opposition to the motion to dismiss on October 17, 2012. (ECF No. 15.)

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff, through his guardian ad litem Mary Carrier, brings this civil rights action against the warden at R.J. Donovan Correctional Facility ("Donovan"), Daniel Parmo, and seven John Doe Correctional Officers. (ECF No. 9 at ¶ 1.)[1] Plaintiff sues Defendant Parmo in his capacity as an individual and as a supervisor. (*Id.* at ¶ 3.)

///

---

[1] Plaintiff's First Amended Complaint also states that this action is brought "against three State of California employees." (ECF No. 9 at ¶¶ 1-2.) However, nowhere in the First Amended Complaint does Plaintiff identify these three individuals, and it is not clear if these three individuals are included in Plaintiff's list of seven John Doe Correctional Officers. What is clear is that Defendant Parmo is the sole named defendant.

1    Plaintiff was housed at Donovan from March 2008 until he was released from custody in
2 November 2011. (*Id.* at ¶ 4.)[2] Plaintiff alleges that while incarcerated at Donovan, Defendant Parmo
3 knew that he suffered from anxiety disorder and bipolar disease and that he was "severely depressed and
4 sick." (*Id.* at ¶ 5.) Although he was classified as an informant and was supposed to be under "protective
5 custody" and be "constantly checked on," Plaintiff alleges that he was instead housed in a gymnasium
6 with the general population. (*Id.* at ¶¶ 5-6) Moreover, [d]espite his severe medical and psychiatric
7 condition, he was placed on the top bunk of the three tiered bunk in a high risk general population area."
8 (*Id.* at ¶ 5.)

9    Plaintiff "alleges that on or about April 15, 2010, a decision was made to take him off of his
10 medications, and the [sic] was told that he had to wait to see the doctor who was on vacation or
11 something." (*Id.* at ¶ 7.) Plaintiff claims that for two weeks he was denied the benefits of medical and
12 psychiatric treatment to which he was entitled. (*Id.* at ¶¶ 35-37.)

13    Plaintiff also alleges that on May 1, 2010, at approximately 2:00 a.m., he was "beaten by prison
14 guards and other inmates and suffered massive brain trauma and other neck injuries." (*Id.* at ¶ 8.)
15 Plaintiff claims that "each and every" defendant beat him and allowed him to be beaten by inmates. (*Id.*
16 at ¶ 24.) Plaintiff suffered "a very large right temporal hematoma [and] several areas in his brain were
17 bleeding and his neck was fractured in several places." (*Id.* at ¶ 15.) Plaintiff was hospitalized and
18 underwent surgery lasting longer than nine hours. (*Id.* at ¶¶ 9-14.) Plaintiff remained on complete life
19 support for at least five weeks and partial life support from mid-June 2010 until September 2010. (*Id.*
20 at ¶ 16.) Plaintiff alleges that he remains incapacitated due to the injuries he sustained while an inmate
21 at Donovan. (*Id.* at ¶ 4.)

22    Plaintiff asserts an Eighth Amendment claim against Defendant Parmo under several theories,
23 including inadequate medical treatment, failure to protect and inhumane conditions of confinement. (*Id.*
24 at ¶¶ 5-6.) Although not expressly listed in the First Amended Complaint, Plaintiff's factual allegations
25 also raise an Eighth Amendment excessive force claim. In addition to Plaintiff's § 1983 claims, Plaintiff
26 also asserts a state law discrimination claim under California's Unruh Civil Rights Act. (*Id.* at ¶¶ 31-

27
28    [2] Because Plaintiff is no longer incarcerated, the Prison Litigation Reform Act's "requirement that prisoners seeking to file civil actions regarding prison conditions must exhaust available administrative remedies" does not apply. *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000).

41.) Finally, although not discussed in the body of the First Amended Complaint, the caption references a discrimination claim under 42 U.S.C. § 12132 of the Americans with Disabilities Act. (*Id.* at 1:23-28.)

### III. DISCUSSION

**A.      Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Citation omitted.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

"Dismissal can [also] be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not

require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**B.    Analysis**

As stated above, Plaintiff's First Amended Complaint contains allegations that Defendant Parmo violated Plaintiff's civil rights in violation of 42 U.S.C. § 1983 and California's Unruh Civil Rights Act. The First Amended Complaint also asserts discrimination claims under the Americans with Disabilities Act. However, in his opposition, Plaintiff concedes that dismissal of his Americans with Disabilities Act claim is proper. (ECF No. 15 at 8:23-24.) Thus, the Court RECOMMENDS Defendant Parmo's motion to dismiss Plaintiff's claims under 42 U.S.C. § 12132 of the Americans with Disabilities Act be **GRANTED**. The Court's attention thus turns to Plaintiff's federal and state civil rights allegations.

**1.    42 U.S.C. § 1983**

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States. *See* 42

U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). Here, there appears to be no dispute that Defendant Parmo acted under color of state law in his official capacity as warden at Donovan. Thus, this case turns on the second inquiry, namely, whether Defendant Parmo deprived Plaintiff of any constitutional rights.

a. <u>Supervisory Liability</u>

As an initial matter, the Court addresses the parties' arguments regarding the applicability of the theory of supervisory liability in § 1983 actions.

A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). As Defendant Parmo correctly recognizes in his motion, "[t]here is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984)). However, Defendant incorrectly interprets that "the law is clear that there is no supervisory liability under § 1983." (ECF No. 14-1 at 3:23-24.) Indeed, the Ninth Circuit has "long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011); *see also Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) ("The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.") (quoting *McClelland v. Facteau*, 610 F.2d 693, 695 (10th Cir. 1979)). Moreover, the Ninth Circuit has "never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Starr*, 652 F.3d at 1205.

In *Starr*, the Ninth Circuit "conclude[d] that a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Id.* at 1207. "[T]o be held liable, the supervisor need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id.* at 1205 (quoting *Larez v. City of Los Angeles*, 946 F.2d

630, 645 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* at 1205-06 (quoting *Larez*, 946 F.2d at 646); *see also Taylor*, 880 F.2d at 1045 ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Redman*, 942 F.2d at 1447 (quoting *McClellan*, 610 F.2d at 695). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others," *Johnson*, 588 F.2d at 743, or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001) (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998); *Larez*, 946 F.2d at 646).

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement – and the liability – of that supervisor. Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Starr*, 652 F.3d at 1206-07.

Thus, Plaintiff's allegations based on Defendant Parmo's role as a supervisor may proceed provided that Plaintiff has adequately alleged Defendant Parmo's personal participation in the alleged constitutional injury.[3]

---

[3] The Court disagrees with Plaintiff's argument that a deliberate indifference claim cannot be determined on a motion to dismiss. (*See* ECF No. 6 at 6:21-7:11.)

### b. Inadequate Medical Treatment Claim

Plaintiff claims that Defendant Parmo violated his Eighth Amendment rights by failing to provide him with adequate medical care. Specifically, Plaintiff claims that he was denied proper medical care because: (1) "on or about April 15, 2010, a decision was made to take him off of his medications" for two weeks; (b) he "was told that he had to wait to see the doctor who was on vacation or something" following the discontinuance of medications and (c) he was housed in on a three-tiered bunk in the gymnasium rather than in a single-cell environment with constant oversight. (ECF No. 9 at ¶¶ 5-7.)

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). This principle "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* The Supreme Court has noted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.*; *see also West v. Atkins*, 487 U.S. 42, 54-55 (1988).

Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to his serious medical needs. *See Estelle*, 429 U.S. at 106; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs, or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted).

In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *See Estelle*, 429 U.S. at 106; *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.") (citing *Hallett v. Morgan*, 296 F.3d 732, 1204 (9th Cir.

2002) ("Mere medical malpractice does not constitute cruel and unusual punishment."); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (even gross negligence is insufficient to establish a constitutional violation)).

In the instant case, Plaintiff has failed to state a claim against Defendant Parmo for deliberate indifference to Plaintiff's serious medical needs. Primarily, Plaintiff makes no allegations that Defendant Parmo participated in any manner in the decision to discontinue Plaintiff's medication. Nor does Plaintiff allege that Defendant Parmo was involved with telling Plaintiff that he needed to wait to see his doctor or in the decision to house Plaintiff with the general population in the gymnasium, or that Defendant Parmo even had knowledge of these acts. Further, Plaintiff has failed to allege any facts under which Defendant Parmo could be found liable under a supervisory liability theory.

Plaintiff's failure to allege any causal connection between these factual allegations and Defendant Parmo requires dismissal of Plaintiff's Eighth Amendment claim based upon alleged deliberate indifference to medical needs. Accordingly, the Court RECOMMENDS Defendant Parmo's motion to dismiss Plaintiff's Eighth Amendment deliberate indifference to medical needs claim be **GRANTED**.

c.  <u>Failure to Protect and Excessive Force Claims</u>

Plaintiff also claims that Defendant Parmo violated his Eighth Amendment rights by failing to protect him from "a gratuitous beating by prison staff and other inmates." (ECF No. 9 at ¶ 19.) Importantly, Plaintiff alleges that "each and every" defendant participated in the beating *and* allowed Plaintiff to be beaten by inmates. (*Id.* at ¶ 24.)

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) ("The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement."). However, due to the "restrictive and harsh" nature of a prison setting, a prisoner's injury does not automatically constitute a constitutional violation. *Morgan*, 465 F.3d at 1045.

///

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). In fact, the Supreme Court has expressly recognized that this duty requires prison officials to protect prisoners from violence at the hands of other prisoners. "[G]ratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (internal quotation marks and citations omitted); *see also Redman*, 942 F.2d at n.7 (prison official's "failure to protect such persons against assaults by other prisoners results in a constitutional violation when that failure constitutes deliberate indifference to their safety."). "Protecting the safety of prisoners and staff involves difficult choices and evades an easy solution." *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986).

To show that a prisoner has been subject to cruel and unusual punishment by an officer's failure to protect him, he must point to evidence in the record which shows that the alleged deprivation was objectively "sufficiently serious," *i.e.*, that the conditions he faced posed "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citing *Helling*, 509 U.S. at 35). Further, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297 (internal quotation marks, emphasis and citations omitted).

In a failure to protect case, "that state of mind is one of 'deliberate indifference' to inmate health and safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03). In articulating the proper "deliberate indifference" test, the Supreme Court has held "that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." *Id.* at 837. Thus, "deliberate indifference entails something more than mere negligence," but may be satisfied with proof of "something less than acts or omissions for the very purpose of causing harm," or that a particular "prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 835, 842. Under an Eighth Amendment failure to protect claim, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted); *see also Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

In the instant case, Plaintiff has adequately pleaded his Eighth Amendment failure to protect and excessive force claims against Defendant Parmo. Contrary to Defendant Parmo's assertion (*see* ECF No. 14-1 at 6:1-12), Plaintiff has not simply alleged that informants are generally in danger of attack and that there are no allegations of Defendant Parmo's personal participation. Rather, Plaintiff alleges that Defendant Parmo participated in the beating and allowed inmates to beat Plaintiff. (ECF No. 9 at ¶¶ 8, 19, 24, 28.) Clearly, Plaintiff has alleged that Defendant Parmo was personally present during the May 1, 2010 alleged gratuitous beating incident. If true, Plaintiff's allegations are sufficient to demonstrate that Defendant Parmo failed to protect Plaintiff from the beating provided by prison staff and inmates and that Defendant Parmo used excessive force against Plaintiff. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997) ("the fact that an individual sat idly by as another human being was seriously injured despite the defendant's ability to prevent the injury is a strong indicium of callousness and deliberate indifference to the prisoner's suffering.").

///

Accordingly, the Court RECOMMENDS Defendant Parmo's motion to dismiss Plaintiff's Eighth Amendment failure to protect and excessive force claims be **DENIED**.

### d. Inhumane Conditions of Confinement Claim

Finally, Plaintiff claims that Defendant Parmo violated his Eighth Amendment rights due to the inhumane conditions of confinement experienced by Plaintiff. Although Plaintiff's First Amended Complaint does not delineate the factual allegations purportedly giving rise to this claim, it appears to the Court that the claim is based upon the same factual allegations as Plaintiff's inadequate medical treatment claim, *i.e.*, that Plaintiff was taken off his medications, told that he would have to wait to see his doctor, and improperly housed with the general population. (ECF No. 9 at ¶¶ 5-7.)

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *See Farmer*, 511 U.S. at 832; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson*, 501 U.S. at 298-300. "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoners' interest or safety." *Whitely v. Albers*, 475 U.S. 312, 319 (1986). To assert an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must satisfy both an objective and a subjective requirement. *See Farmer*, 511 U.S. at 834; *Allen*, 48 F.3d at 1087.

Under the objective requirement, "a prison official's acts or omissions must result in the denial of the 'minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347). This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *see also Farmer*, 511 U.S. at 534; *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

///

The subjective requirement, relating to the defendant's state of mind, requires "deliberate indifference." *Allen*, 48 F.3d at 1087. "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Finally, the Court must analyze each claimed violation in light of these requirements, for Eighth Amendment violations may not be based on the "totality of conditions" at a prison. *Hoptowit*, 682 F.2d at 246-47; *Wright*, 642 F.2d at 1132.

In the instant case, for the reasons stated above in connection with Plaintiff's inadequate medical treatment claim, Plaintiff has likewise failed to state a claim against Defendant Parmo for inhumane conditions of confinement. Plaintiff does not allege that Defendant Parmo was in any way involved in the decision to stop Plaintiff's medications or to house him in the gymnasium. Moreover, although under-staffing of medical personnel can support a prisoner's § 1983 claim of cruel and unusual punishment, *see Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1461 (9th Cir. 1988) (understaffing such that "psychiatric staff could only spend minutes per month with disturbed inmates" supported jury's finding of deliberate indifference), Plaintiff makes no allegations that Defendant Parmo participated in any manner in telling Plaintiff that he needed to wait to see his doctor, or that Defendant Parmo even had knowledge of this act. Further, Plaintiff has failed to allege any facts under which Defendant Parmo could be found liable under a supervisory liability theory.

Accordingly, the Court RECOMMENDS Defendant Parmo's motion to dismiss Plaintiff's Eighth Amendment inhumane conditions of confinement claim be **GRANTED**.

### 2.    California's Unruh Civil Rights Act

Plaintiff alleges that Defendant Parmo violated California's Unruh Civil Rights Act, which provides, in part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

CAL. CIV. CODE § 51(b). "To prevail on his disability discrimination claim under the Unruh Civil Rights Act, plaintiff must establish that (1) he was denied the full and equal accommodations, advantages,

1  facilities, privileges, or services in a business establishment; (2) his disability was a motivating factor
2  for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities,
3  privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage,
4  loss or harm." *Johnson v. Beahm*, No. 2:11-cv-0294-MCE-JFM, 2011 U.S. Dist. LEXIS 129341, *10
5  (E.D. Cal. Nov. 8, 2011) (citing California Civil Jury Instructions (BAJI), No. 7.92 (Spring 2009)).

6  Defendant Parmo argues in his motion to dismiss that Plaintiff fails to state a claim for violation
7  of the Unruh Civil Rights Act because the statute does not apply to prisons. Defendant Parmo relies on
8  two decisions from the Eastern District of California: *Estate of Bock v. County of Sutter*, No. 2:11-cv-
9  00536-MCE-GGH, 2012 U.S. Dist. LEXIS 15720, *27-28 (E.D. Cal. Feb. 8, 2012), and *Lee v.
10 Wilkinson*, No. 1:09-cv-00722-YNP PC, 2009 U.S. Dist. LEXIS 81974, *19-20 (E.D. Cal. Sept. 1,
11 2009).

12 Plaintiff argues in his opposition that Defendant Parmo's reliance on *Estate of Bock* and *Lee* is
13 faulty in that they are "unpublished cases" and that Defendant Parmo "has cited no controlling legal
14 authority that the Unruh Act does not apply to prison inmates." (ECF No. 15 at 7:18-19, 8:15-16.)
15 Moreover, Plaintiff contends that California has a broad policy of interpreting the statute's "business
16 establishment" clause. (*Id.* at 8:2-4.)

17 The Court agrees with Defendant Parmo in finding that a state prison does not qualify as a
18 "business establishment" for purposes of California's Unruh Civil Rights Act. Importantly, although
19 not discussed by either party, this district has already concluded as much in a *published* opinion. *See
20 Taormina v. Cal. Dep't of Corrs.*, 946 F. Supp. 829, 833-34 (S.D. Cal. 1996). In *Taormina*, this Court
21 stated: "Although 'business establishment,' for the purposes of §§ 51 and 51.5, is used in the broadest
22 sense reasonably possible, plaintiffs cite no authority, nor make any reasonable argument, that a state
23 prison qualifies as a 'business establishment' for purposes of the statute." *Id.* at 833. The Court noted
24 that the California Supreme Court, while interpreting § 51, found that "[t]he word 'business' embraces
25 everything about which one can be employed, and it is often synonymous with calling, occupation or
26 trade, engaged in for the purpose of making a livelihood or gain." *Id.* at 833-34 (quoting *O'Connor v.
27 Village Green Owners Assoc.*, 33 Cal.3d 790, 795 (1983). In contrast, however, "a prison does not
28 qualify as a 'business' because prisoners are not engaged in a calling, occupation or trade for purposes

of making a livelihood or gain. Rather, they are incarcerated by the state because of crimes which they have committed." This reasoning has been adopted by at least two other federal district courts in California. *See Estate of Bock*, No. 2:11-cv-00536-MCE-GGH, 2012 U.S. Dist. LEXIS 15720, *29 (holding "that Sutter County Jail is not a business establishment under the Unruh Act."); *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1049 (N.D. Cal. 2012) (recognizing that "the Unruh Act does not apply to correctional facilities per se.").

Accordingly, the Court RECOMMENDS that Defendant Parmo's motion to dismiss Plaintiff's claims under California's Unruh Civil Rights Act be **GRANTED**.[4]

## IV. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Larry A. Burns pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Judge issue an order:

1. Approving and adopting this Report and Recommendation;
2. **GRANTING** Defendant Parmo's motion to dismiss Plaintiff's 42 U.S.C. § 1983 claims based upon inadequate medical treatment and inhumane conditions of confinement theories;
3. **DENYING** Defendant Parmo's motion to dismiss Plaintiff's 42 U.S.C. § 1983 claims based upon failure to protect and excessive force theories;
4. **GRANTING** Defendant Parmo's motion to dismiss Plaintiff's claims under California Unruh Civil Rights Act; and
5. **GRANTING** Defendant Parmo's motion to dismiss Plaintiff's claims under the Americans with Disabilities Act.

IT IS FURTHER ORDERED that **no later than January 22, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned

---

[4] In addition, to the extent Plaintiff is asserting claims under §§ 51.1, 51.2 and 51.3 of the Unruh Civil Rights Act, such claims should independently be dismissed for failure to state a claim. First, § 51.1 simply requires that a copy of a plaintiff's appellate brief be filed with the State Solicitor General. CAL. CIV. CODE § 51.1. Second, §§ 51.2 and 51.3 prohibit housing discrimination based upon age. CAL. CIV. CODE §§ 51.2, 51.3. None of these sections are relevant to Plaintiff's factual allegations.

1  "Objections to Report and Recommendation." The parties are advised that failure to file objections
2  within the specified time may waive the right to raise those objections on appeal of the Court's order.
3  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th
4  Cir. 1991).

**IT IS SO ORDERED.**

DATED: January 8, 2013

_____
DAVID H. BARTICK
United States Magistrate Judge